THE HONORABLE ROBERT S. LASNIK

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

DAVID PALLIES,

                Plaintiff,

     v.

THE BOEING COMPANY, a Delaware corporation,

                Defendant.

Case No. 2:16-cv-1437

**DEFENDANT THE BOEING COMPANY'S MOTION FOR SUMMARY JUDGMENT OR IN THE ALTERNATIVE PARTIAL SUMMARY JUDGMENT**

**NOTE ON MOTION CALENDAR: JULY 28, 2017**

MOTION FOR
SUMMARY JUDGMENT -- i
(No. 2:16-cv-1437)

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
ONE MARKET
SPEAR STREET TOWER
SAN FRANCISCO, CA 94105-1596
+1.415.442.1000

## I.  INTRODUCTION AND RELIEF REQUESTED

On January 13, 2016, Plaintiff David Pallies ("Pallies") was placed on a medical layoff from The Boeing Company ("Boeing") after becoming medically unable to perform his Hooktender job, and after Boeing was unable to find him another open job he could perform.

This dispute arises from events that occurred one year earlier, in January 2015, when Boeing moved Pallies out of an open Crane Dispatcher position, which he had been temporarily filling, to accommodate another employee who was permanently disabled from performing his Crane Operator Hooktender ("Hooktender") job but was able to perform the Crane Dispatch job. Pallies returned to his base Hooktender position.  Eight months later, Pallies received his own work restrictions from his doctor that permanently disqualified him from working as a Hooktender with or without reasonable accommodation.  Pallies concedes that Boeing then spent four months looking to accommodate him with other vacant positions he could perform but there were none.  As result, Pallies was placed on a medical layoff.

Contrary to the claims Pallies asserts in the Complaint, Boeing did not discriminate against Pallies based on his disability in violation of the Americans with Disability Act ("ADA") or the Washington Law Against Discrimination ("WLAD"), RCW § 49.60.180.  Pallies' claims fail because the undisputed evidence confirms he was not disabled in January 2015 when the Crane Dispatcher job was given to the disabled employee and he returned to the Hooktender job. Pallies admits on several occasions that the Crane Dispatch job was temporary, it was not a medical accommodation and that he never requested an accommodation until September 30, 2015.  After returning to his base Hooktender job in January 2015, Pallies effectively performed all of the essential functions of his Hooktender job for eight more months without any restrictions, and his medical records confirm that he was able to do so.  By the time he did become disabled from his Hooktender job on September 30, 2015, there were no open Crane Dispatch jobs or any other open position that would have accommodated his restrictions.  The undisputed evidence confirms that Boeing engaged in the interactive process on a weekly basis

MOTION FOR
SUMMARY JUDGMENT -- 1
(No. 2:16-cv-1437)

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
ONE MARKET
SPEAR STREET TOWER
SAN FRANCISCO, CA  94105-1596
+1.415.442.1000

for four months and conducted a reasonable accommodation review of more than 40 possible placement opportunities for Pallies after he was no longer able to work as a Hooktender. As Pallies admits, as of September 30, 2015, given the severity of his restrictions, he could not perform any of these vacant positions with or without accommodation. Pallies filed this lawsuit because he wants one of the nine Crane Dispatch jobs in the Puget Sound. But, Boeing was not legally required to reassign Pallies to a Crane Dispatch job that was already occupied (i.e., displace someone) or to create a new position. Pursuant to Federal Rule of Civil Procedure 56, Boeing respectfully requests that the Court grant its motion for summary judgment or partial summary judgment, dismissing Pallies' claims with prejudice.

## II.  STATEMENT OF UNDISPUTED MATERIAL FACTS

### A.  Boeing's Disability Accommodation Procedure.

Boeing is an equal employment opportunity employer, with strict policies prohibiting disability discrimination. Declaration of Britni Stevens ("Stevens Decl.") ¶ 4; Exh. 1 (Boeing Policy 5 Equal Employment Opportunity). In keeping with this commitment, Boeing maintains a detailed disability accommodation policy—Procedure 784 entitled "Reasonable Accommodation" ("PRO-786")—that outlines Boeing's procedure for providing accommodations to employees with physical or mental impairments. Deposition of David Pallies ("Pallies Dep.") 145:1-23, Exh. 33; Stevens Decl. ¶ 4; Exh. 2.[1]

Section 2.D. of Procedure PRO-784 states in pertinent part:

> When a qualified individual with a physical or mental impairment has requested a reasonable accommodation, The Boeing Company will engage in an individualized assessment including participating in interactive discussions with the applicant or employee, research of appropriate accommodations, medical reviews, implementation of selected accommodations, and documentation of results.

---

[1] Pertinent excerpts of Pallies' deposition testimony and exhibits are attached to the Declaration of Jennifer Svanfeldt filed with this Motion as Exhibit 1.

MOTION FOR
SUMMARY JUDGMENT -- 2
(No. 2:16-cv-1437)

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
ONE MARKET
SPEAR STREET TOWER
SAN FRANCISCO, CA 94105-1596
+1.415.442.1000

*Id.*; *see also* Pallies Dep. 145:1-23, Exh. 33 (testifying that he received and understood Boeing's reasonable accommodation process).  As reflected in Section 3.A.1. of PRO-784, reassignment to a vacant position is one of the accommodations Boeing provides.  Stevens Decl. ¶ 4; Exh. 2.

Employees like Pallies who are covered by a collective bargaining agreement ("CBA") are governed by the CBA as well as PRO-784, "with the collective bargaining agreement having precedence."  Stevens Decl. ¶¶ 4, 5; Exh. 2.  Here, a CBA between Boeing and the International Association of Machinists and Aerospace Workers union governed the terms and conditions of Pallies' employment.  Pallies Dep. 106:16-22.  The CBA contains specific guidelines for disabilities and medical conditions that affect an employee's ability to perform his or her job.  Specifically, Section 16.10 of the CBA provides:

> An employee who is unable to perform his or her job because of an injury or illness may be reclassified to another job that he/she is qualified and able to perform subject to the employee's medical restrictions or shall be reclassified to a job in which he/she has established surplus rights (Category A, downgrade, and reclassification) in Article 22 subject to the employee's medical recommendation.

Declaration of Kenneth White ("White Decl.") ¶ 2; Exh A.  Section 16.9 of the CBA further provides:

> [An] employee who may need a new medical recommendation or the removal of a current medical recommendation, shall have the responsibility to report to the nearest Company medical clinic or dispensary and provide [. . . .] [a] statement by the employee's community Health Care provider pertaining to his/her medical condition, or change to such condition, including a statement of the employee's functional capacities."

White Decl. ¶ 2; Exh. A.

**B.     December 2010: Boeing Hires Pallies As A Crane Operator Hooktender.**

Boeing hired Pallies to work as a Crane Operator Hooktender ("Hooktender") in December 2010.  Pallies Dep. 18:18-19:8; 78:9-14.  As a Hooktender, Pallies was responsible for controlling an overhead traveling crane, which was used to lift, move, lower, and position aircraft, missile, space vehicle or marine craft parts and equipment.  Pallies Dep. 18:21-19:1,

MOTION FOR
SUMMARY JUDGMENT -- 3
(No. 2:16-cv-1437)

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
ONE MARKET
SPEAR STREET TOWER
SAN FRANCISCO, CA 94105-1596
+1.415.442.1000

Exh. 2.  He did this by, among other things, securing and adjusting suitable chains, cables, slings, hooks and other lifting and securing devices to properly load and balance equipment.  *Id.*

### C.   July 2014:  Pallies Temporarily Fills An Open Crane Dispatcher Job.

In July 2014, Boeing had an open Crane Dispatch position on the third shift (*i.e.* the night shift) and Pallies decided to try it out.  Pallies Dep. 19:9-25 ("it created an opening . . . so I went up and tried the dispatch position."); 20:9-22:14; Ex. 4 ("I just stayed up on the position and ever week or two Brandon Cowell would check with KC White about putting me in the position permanently.  This conversation continued until sometime in October 2014.").  Crane Dispatchers coordinate Hooktender's assignments and receive, consolidate and screen requests for crane services and operators to accomplish requests.  Pallies Dep. 18:21-19:1; Ex. 2.

According to Pallies, dispatching was a temporary assignment until he could "prove himself."  Pallies Dep. 48:1-22; 54:14-18; 62:25-63:11; Ex. 7 (introducing himself to the superintendent of cranes in an email dated 12/31/14 as the "**Temporary** 3rd Shift Crane dispatcher.") (emphasis added); 59:17-62:14; Exh. 6 (Pallies admits he called it a "temporary Crane Dispatcher position" in an interview with an HR investigator); 107:18-109:2; Exh. 23 (complaining that he had to work in the job "temporarily to prove himself."); 20:5-8, Exh. 3; Kenneth White Deposition ("White Dep.") 9:1-14:23; 81:2-18; 82:23-83:6 (explaining that "temporary assignments" are a "common thing within the dispatch world" and that stating that "we typically give people a test drive because not everybody likes doing it" and "we have about, I don't know, a handful of people on each shift that have done it to see if it works for them and to see if it works for us.");[2] Deposition of Pam Steel ("Steel Dep.") 27:24-28:21; Ex. 1 [BOEING 000145-155] (EEO investigator finding that Pallies "essentially admitted that the Crane Dispatcher position was on a trial basis when he testified that he needed to prove himself to

---

[2] Pertinent excerpts of White's deposition testimony and exhibits are attached to the Declaration of Jennifer Svanfeldt filed with this Motion as Exhibit 2.

MOTION FOR
SUMMARY JUDGMENT -- 4
(No. 2:16-cv-1437)

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
ONE MARKET
SPEAR STREET TOWER
SAN FRANCISCO, CA  94105-1596
+1.415.442.1000

White before he was given the position permanently.").[3] Pallies admits that no one "directly" told him that Boeing would assign him to the dispatch job on a permanent basis, though Pallies claims it was "implied." Pallies Dep. 54:24-55:7 (Q: And no one told you that you had gotten the dispatch job permanently, correct? A: . . . . Anybody say it directly? No**.**).

### D.    November 2014: Boeing Accommodated a Disabled Hooktender With The Open Crane Dispatch Position and Pallies Resumed his Job as a Hooktender.

As alleged in the Complaint, Pallies learned in October 2014 that his temporary assignment as a Crane Dispatcher was ending so that Boeing could place another employee who had suffered a heart attack into that position. Comp. ¶ 3.7; Pallies Dep. 30:24-31:3. In November 2014, Brian Tunks, another Hooktender, returned to work with a medical condition and work restrictions that precluded him from performing as a Hooktender with or without an accommodation. Stevens Decl. ¶ 7; Pallies Dep. 20:9-22:14; Ex. 4 [BOEING 000596]. Tunks requested reassignment to the Crane Dispatch job as an accommodation, and Tunks had contractual "surplus rights" to the vacant Crane Dispatch job based on his seniority under the CBA. *Id*; Stevens Decl. ¶¶ 6, 7. The seniority provision in the CBA provides:

> In the event that the Company determines that there is an excess of employees in a job title at a particular Company location, the order of surplus of such excess will, subject to the use of retentions as defined in Sections 22.2 and 22.3, be in reverse seniority order in such job title at the primary or remote location where the surplus has been declared.

White Decl. 2, Exh. A.

In addition to giving preference to employees with seniority, pursuant to the ADA and PRO-784, Boeing gives preference to employees with conditions that substantially limit their ability to perform their job. Deposition of Glenda Hubbard ("Hubbard Dep.") 12:3-17; 23:11-15; 27:18-22; 40:14-42:11; 53:2-5; 58:12-15 (employees with medical restrictions get preference for

---

[3] Pertinent excerpts of Pam Steel's cited deposition testimony and exhibits are attached to the Declaration of Jennifer Svanfeldt filed with this Motion as Exhibit 5.

MOTION FOR
SUMMARY JUDGMENT -- 5
(No. 2:16-cv-1437)

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
ONE MARKET
SPEAR STREET TOWER
SAN FRANCISCO, CA 94105-1596
+1.415.442.1000

open positions over employees with an Employee Request for Transfer); Exh. 13.[4]  In accordance with that policy, on January 21, 2015, Tunks' Reassignment Focal Glenda Hubbard informed Crane management that Tunks had preference to the vacant job given his work restrictions:

> As you are aware, the employee I am working with, Brian Tunks is in Reassignment and **is protected under ADA and does have preference due to this situation over other employees who are not covered**.  I understand this can be frustrating to your organization, however, we need to make sure we mitigate risk for the company as well as do the right thing for the employee.  I have attached the statements below from the ADA and EEOC stance on this type of situation and if you need clarification please contact me or have your superintendent contact me or your HR support (I have cc'd them) if needed.  I also work close with the Union Business Reps and the business rep for your area, Rich McCabe along with Union Relations who is fully aware of this process as well.
>
> I look forward to your information/determination on Thursday.
>
> "The ADA only requires that the employee be qualified.  Furthermore, if the employee is qualified for the position s/he is entitled to get the position **without competing for it**."
>
> "The EEOC takes the position that **reassignment means that the employee gets the vacant position** if s/he is qualified for the position."

Hubbard Dep. 40:24-41:5; Exh. 14 (emphasis added); *see also* Hubbard Dep. 8:6-10 (as a Reassignment Focal, Hubbard presented guidelines for reassignment to management, "policies and procedures as they apply to the[] Reassignment Process."); 23:8-2 ("I had no idea anybody was in the [dispatch] position.  I was told it was an open position.").  Accordingly, in January 2015, Boeing assigned the Crane Dispatch job on the third shift to Tunks, an employee with more seniority than Pallies who had work restrictions that precluded him from performing in his Hooktender job with or without reasonable accommodation.[5]  Deposition of Hoyt Bonar ("Bonar

---

[4] Pertinent excerpts of Glenna Hubbard's deposition testimony and exhibits are attached to the Declaration of Jennifer Svanfeldt filed with this Motion as Exhibit 3.

[5] Any breach of contract argument that Pallies was promised the Crane Dispatch position in 2014 if he could "prove himself" is preempted by the Labor Management Relations Act ("LMRA").

MOTION FOR
SUMMARY JUDGMENT -- 6
(No. 2:16-cv-1437)

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
ONE MARKET
SPEAR STREET TOWER
SAN FRANCISCO, CA  94105-1596
+1.415.442.1000

Dep.")  18:21-19:1 (Bonar informed Pallies that "there was going to be someone medically placed in the position that he was temporarily filling."); 25:13-25; Ex. 14;[6]  Pallies Dep. 20:0-22:14; Ex. 4 (BOEING 00597); 59:17-62:14; Exh. 6 (Pallies complained to Boeing's EEO department that White showed "favoritism" by "putt[ing] Tunks in the Dispatcher position as a medical accommodation after Tunks had a heart attack to and returned to work with a medical accommodation and restrictions."); 114:1-4 ("Q: Mr. Tunks was put into the dispatch job based on a medical accommodation eight months before you applied for a medical accommodation?  A: Yup. Yes."); Pallies Dep. 107:18-109:2; Exh. 23 (Pallies' Favoritism/Fairness Complaint states "Bryan didn't even have to work the job temporarily to prove himself like he did, but was placed permanently in the position right away."); Hubbard Dep. 12:3-17; 23:11-15; 27:18-22; 40:14-42:11; Exh. 13.

Pallies testified – consistent with his own doctor's records – that his condition did not prevent him from performing the essential functions of his Hooktender job in January 2015 and that in fact, he was given his medical certification to be a Hooktender and continued performing the essential functions of a Hooktender without accommodation for over eight more months until he was issued medical restrictions due to his neurological condition on September 30, 2015. Pallies Dep. 84:20-85:3 and Exh. 16; *see also* 20:9-22:14; Ex. 4 (BOEING 000597 ("I was given my medical certification to be a Hook Tender.") ("After many frustrating months of performing the dispatch position at a very high level of efficiency and dealing with the uncertainty of the situation after the Christmas break I left the dispatch position and returned to my hook tender position in early January 2015.").

Pallies was also medically released without limitations four times before September 30,

---

[6] Pertinent excerpts of Hoyt Bonar's cited deposition testimony and exhibits are attached to the Declaration of Jennifer Svanfeldt filed with this Motion as Exhibit 4.

MOTION FOR
SUMMARY JUDGMENT -- 7
(No. 2:16-cv-1437)

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
ONE MARKET
SPEAR STREET TOWER
SAN FRANCISCO, CA  94105-1596
+1.415.442.1000

2015:

- In November 2014, Pallies told his own doctor that his condition had a negligible impact on his capacity to do his job. Pallies Dep. 77:11-25; 78:1-8 ("Q: And at this time, November 2014, your neuropathy was not preventing you from being a crane operator; is that correct?  A: I was still able to do the job, yes."); 81:23-82:6 ("Q: . . . Dr. Sharf says that you have **negligible impact** on your capacity to do your job.  Is that what you told Dr. Sharf?  A:  Yeah, I believe that's what I told him at that time.").

- On January 11, 2015, Pallies was certified to work as a Crane Operator Hooktender with no restrictions.  Pallies Dep. 22:15-22; 28:5-29:6; 78:15-20; 82:4-6.

- On January 21, 2015, Pallies' doctor certified that Pallies was able to perform the "essential functions" of his "Hooktender" job despite his condition. Svanfeldt Decl. ¶11; Exh. 14 (Medical Certification Form).

- On July 15, 2015, Pallies' doctor released him to regular duties with no restrictions following a knee injury.  Pallies Dep. 83:1-13; Exh. 14.

Approximately six months *after* returning to his Hooktender position, on July 15, 2015, Pallies again informed Boeing that he did not need assistance or accommodations to perform his Hooktender position.  Pallies Dep. 83:7-84:15; Exh. 15 (On a Boeing Occupational Health Review Questionnaire, Pallies checked the box next to "No" in response to the question, "Do you have any conditions that keep you from performing all tasks and functions of your job at Boeing? If yes, do you need assistance or accommodations to perform your job?")

**E.      September 2015:  Pallies Becomes Permanently Unable To Work As a Hooktender Due to His Neurological Condition.**

Pallies effectively performed the essential functions of his Hooktender job without accommodation until September 30, 2015, when he notified Boeing's Medical Center for the first time that his personal physician had issued him medical restrictions due to his neurological condition that permanently disqualified him from working as a Hooktender.  It was the first time Pallies had requested an accommodation for his neurological condition.  Pallies Dep. 22:21-23:2; 28:5-8; Exh. 5 ("I have Peripheral Neuropathy for which I obtained a medical accommodation through Boeing on September 30, 2015.  **Prior to that I did not have an accommodation**

MOTION FOR
SUMMARY JUDGMENT -- 8
(No. 2:16-cv-1437)

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
ONE MARKET
SPEAR STREET TOWER
SAN FRANCISCO, CA  94105-1596
+1.415.442.1000

**through Boeing**."); 78:15-79:2; 84:20-85:3. (Emphasis added).  Pallies further admits that the Crane Dispatch job was not a medical accommodation.  Pallies Dep. 107:18-109:2 (testifying that "**I wasn't placed up there because of my medical condition**."); *see* 59:17-62:14; Exh. 6 ("he did not obtain a medical accommodation or restrictions until September 30, 2015, for his medical condition (Neuropathy).")

Pallies never requested an accommodation for his neurological condition because he did not know how it would work.  Pallies Dep. 115:19-116:17; Exh. 27 ("I never filed an Accommodations Request because I did not know how it would work"); *Cf.* Pallies Dep. 115:19-116:17; Exh. 27 (in the same interview with the HR investigator, Pallies contradicted himself by stating, "I do recall having a conversation with White about my medical condition.  White stated that if I brought my medical condition into the picture, we could do that . . . ."); Pallies Dep. 20:9-22:14; Ex. 4 ("In the last meeting I had with KC White he said to me, 'If you want to bring your medical condition into this, now would be the time.'").  In another interview with a HR investigator, Pallies again contradicted himself stating that he did not obtain medical work restrictions earlier than he did "because he knew that it would disqualify him as a Crane Operator and he would be out of a job if the temporary Crane Dispatcher position did not work out." Pallies Dep. 59:17-62:14; Exh. 6; *see also* 111:12-22 (Pallies admitted at deposition that it was too late to request an accommodation by the time he found out about Tunks because, if he was disqualified from the Hooktender job and did not get the Crane Dispatch job, he would not have a job at all); Steel Dep. 27:24-28:21; Ex. 1 [BOEING 000145-155] (Case closed where "[Pallies] agreed that he did not obtain a medical accommodation until approximately eight months after his coworker Brian Tunks replaced him as a Crane Dispatcher.  Moreover, [Pallies] agreed that was [sic] not so much concerned about the medical accommodation as the ethics around Respondent White telling him that the position was his permanently once he proved himself.").

MOTION FOR
SUMMARY JUDGMENT -- 9
(No. 2:16-cv-1437)

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
ONE MARKET
SPEAR STREET TOWER
SAN FRANCISCO, CA 94105-1596
+1.415.442.1000

**F.    October 2015-January 2016: Boeing Spends Four Months Searching For Vacant Jobs Pallies Can Perform With Or Without Reasonable Accommodation; Pallies Admits He Could Perform None And Is Placed on Medical Layoff.**

On October 5, 2015, immediately after learning that Pallies had work restrictions for the first time, Debbie Daily, the Disability Management Representative ("DMR") assigned to work with Pallies, held a "DMR Interactive Discussion" with Pallies, his supervisor Brandon Cowell and his union representative Carolyn Williams in connection with his permanent disqualification from the Hooktender job pursuant to Section 4.B.2. of PRO-784.[7]  Pallies Dep. 85:4-86:23; Exh. 17.  During the meeting, Pallies acknowledged that no accommodation would have allowed him to work as a Hooktender.  Pallies Dep. 22:21-23:2; 28:5-8; Exh. 5 (Pallies stating, "There's no way to accommodate my condition as a hooktender."); 59:17-62:14; Exh. 6 (Pallies stating that "there was no way to accommodate his condition as a Crane Operator."); 87:22-88:1; 86:19-24; Exh. 17 [Q. 5 of DMR Interactive Discussion Form].   Pursuant to Section 3.E.2. of PRO-784, if there is no effective reasonable accommodation to an employee's current position, reassignment to a vacant position will be considered.   Stevens Decl. ¶ 2; Ex. 2.  Specifically, Section 3.E.2. provides:

> a.  If there is not an effective reasonable accommodation in an employee's current position, reassignment to a **vacant** position will be considered.  In order to be reassigned to a vacant position, an employee must meet the qualification of the position.  An employee is considered qualified for the position if he or she meets the requisite skills, experience, education, and other job related requirements of the position, and can perform all the essential functions of the position with or without reasonable accommodation.

> b.  If more than one vacant position is available, the employee's preference should be considered . . . .

> c.  **There is no obligation to create a position as an accommodation**.

---

[7]  Section 4.B.2. of PRO-784 provides: "Management, with the Reasonable Accommodation Focal, will engage in an interactive discussion with the employee about his/her need for accommodation.  Job-related limitations, abilities, and accommodations will be reviewed to identify potential accommodations pertaining to the employee base job and impact to the organization."

MOTION FOR
SUMMARY JUDGMENT -- 10
(No. 2:16-cv-1437)

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
ONE MARKET
SPEAR STREET TOWER
SAN FRANCISCO, CA  94105-1596
+1.415.442.1000

e. **Reassignment may only occur to a vacant position. A position is not "vacant" if another employee has rights to that position under the applicable collective bargaining agreement**.

*Id*. (emphasis added).

As reflected in his DMR Interactive Discussion Form, Pallies acknowledged that he was being placed into the Reassignment Process coordinated by Reassignment Focals who would look for vacant positions and work that would accommodate his restrictions. Pallies Dep. 86:8-89:1, Exh. 17.

In a letter to Pallies dated October 21, 2015, Hubbard, the Reassignment Focal assigned to Pallies' case, stated that:

> Our desired outcome is to provide a safe and productive job placement for you. We will comply with The Boeing Company policies and procedures, the federal (Americans with Disabilities Act) and state disabilities laws, and other legal and contractual requirements. Your involvement in this process is valuable and communication with us is necessary. We will work with you to provide a variety of services to assist you in this process. Although we will make every effort to find an alternative job placement, please be advised that you may be subject to a medical layoff if appropriate placement is not available.

Pallies Dep. 85:4-86:21; Exh. 17. Pallies understood the outcomes of Boeing's reassignment process: (1) reassignment to a job of equal pay grade, (2) reassignment to a job of a lower pay grade, or (3) if there were no jobs of equal or lower pay grade that Pallies could perform, then Pallies would be placed on medical layoff. Pallies Dep. 86:13-18.

On October 27, 2015, Hubbard conducted the "Reassignment Process Information" meeting with Pallies and explained the weekly job search process, including the job searches that were already reviewed for Pallies the past week. Pallies Dep. 90:1-91:14; 91:25-92:20; Exh. 18, 20. During the Reassignment Process, Hubbard first assessed whether Pallies would consider a "salary" job and whether he had "contractual rights" under the CBA to any open jobs. Pallies Dep. 89:2-5; 90:1-19; Exh. 20 [Reassignment Process Information Form]. As reflected, in the Reassignment Process Information Form, Pallies declined to consider available "salary" jobs. *Id*. Although Pallies had contractual rights to the Crane Dispatch position, Hubbard learned that

MOTION FOR
SUMMARY JUDGMENT -- 11
(No. 2:16-cv-1437)

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
ONE MARKET
SPEAR STREET TOWER
SAN FRANCISCO, CA 94105-1596
+1.415.442.1000

Pallies could not be placed in the job because it was not "vacant" and Pallies had less seniority than the other Crane Dispatchers. Pallies Dep. 89:6-13;14-25; 90:1-19; 91:18-24; Exh. 20 ("Seniority will not hold"). Specifically, as the DMR reported in Pallies' History Detail Report, "the pool for the C1608 [Crane Dispatcher] is very small within the Puget Sound and Pallies' seniority w[ould] not hold him even if he [was] able to do the job." *Id.* The Reassignment Focal concluded that "due to Pallies' seniority, he w[as] not able to hold the contractual rights job [sic] job of the C1608 . . . . [the] Hourly Workforce focal for this job code has confirmed that there are only 9 employees in Puget Sound in this job code and the most junior employee has a seniority date of 5/27/97 and [Pallies'] seniority is 12/03/10." *Id.*; Hubbard Dep. 27:16-22 (Hubbard learned that Pallies did not have seniority to hold the dispatch and that there were only nine people in the job and that there was no opening.)

As provided by Section 1.S. of PRO-784, "A job is considered vacant either because it is a new position, or because of the departure of its previous occupant, and where placement into the position does not violate terms and conditions of the collective bargaining agreement." Stevens Decl. 4, Exh. 2. Here, it is undisputed that the Crane Dispatch job was not vacant and placing Pallies into the Crane Dispatch position would have violated the following seniority provision in the CBA:

> In the event that the Company determines that there is an excess of employees in a job title at a particular Company location, the order of surplus of such excess will, subject to the use of retentions as defined in Sections 22.2 and 22.3, be in reverse seniority order in such job title at the primary or remote location where the surplus has been declared.

White Decl. 2, Exh. A.

On October 27, 2015, while in the Reassignment Process, Pallies made a medical accommodation request to be transferred off the third shift (i.e. night shift) "to reduce fatigue related to his condition." Pallies Dep. 78:9-14; 92:21-93:2; Exh. 21; *see also* Svanfeldt Decl. ¶11; Exh. 12 (Pallies' doctor noted that his condition "allows for him to continue to work" but

MOTION FOR
SUMMARY JUDGMENT -- 12
(No. 2:16-cv-1437)

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
ONE MARKET
SPEAR STREET TOWER
SAN FRANCISCO, CA 94105-1596
+1.415.442.1000

that "he would be best suited to work at the second shift rather than the third shift to to [sic] reduce fatigue related to his condition.")  Boeing accommodated Pallies' request and moved him to light duties on first shift.  Pallies Dep. 94:17-95:1.

On October 27, November 2, 10, 16, 23, and 30, December 7, 11 and 17 and January 4, 6 11 and 12, Hubbard communicated with Pallies about weekly job searches.  Pallies Dep. 90:1-91:14; 91:25-92:20; 95:5-105:18; Exh. 18, 20.  In total, Boeing reviewed over 40 jobs for Pallies' potential reassignment and kept him in the Reassignment Process longer than is typical.  Pallies Dep. Exh. 18 [*see* BOEING 000158-165]; Hubbard Dep. 57:25-59:7 ("I wanted to say helping him.  I'm going to continue to look and see if the environment changes after the first of the year.  Because typically we don't keep people in the process for that length of time."); 29:1-30:19 ("I tried. I went over and beyond. I looked at more jobs than I have looked at for an employee that I can remember. I scrubbed every job that occurs at Boeing. I scrubbed the bump backfill, which is a workforce server that skill teams put job openings on before it goes out into our Career Design at Boeing jobs for him.  Looking at the JAs [job analyses], looking at the restrictions to see if I could find something."); 49:6-50:3; Ex. 26.  But, Pallies was unable to perform **any** vacant jobs with his medical restrictions with or without accommodation.  Pallies Dep. 20:9-21:8, Exh. 4 ("At this time I spent the next few months in the job reassignment process.  But Boeing was unable to find me another position to meet my needs.").  As a result, Pallies was placed on medical layoff January 13, 2016.  Pallies Dep. 105:16-106:14; Exh. 22 (1/21/16 letter from Hubbard to Pallies stating "Unfortunately, we were unable to identify any suitable vacant positions.  Effective 1/13/16, your employment with The Boeing Company was terminated for the reason of 'Medically Unable to Perform Work Assignment.'"); Stevens Decl. ¶ 10; Exh. 4.

Employees like Pallies who are represented by the Union and have contractual rights "may return to the company for a **six year period** following medical layoff" and are directed to "contact [their] union or call Accommodation Services (1-800-242-1110), option 2) to discuss

MOTION FOR
SUMMARY JUDGMENT -- 13
(No. 2:16-cv-1437)

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
ONE MARKET
SPEAR STREET TOWER
SAN FRANCISCO, CA  94105-1596
+1.415.442.1000

applicable contractual rights." *Id.* (emphasis added). Boeing also informed Pallies to continue monitoring vacant positions on the Boeing Employment web page (http:www.boeing.com/careers/)." *Id.*; Pallies Dep. 90:1-19; Exh. 20 (Section 3). Pallies was also informed that Boeing would provide him 12 months of "Post Term Application Assistance." Pallies Dep. 90:1-19; Exh. 20 (Section 3).

Since his Boeing employment ended, Pallies has confirmed that he is completely and totally disabled and unable to perform the type of work performed at Boeing, except sedentary desk work. Svanfeldt Decl. ¶13; Exh. 16. Pallies therefore applied for Social Security Disability benefits in December 2016 and specifically stated in his application that he now requires "sedentary type work which I have no skills or training in." Svanfeldt Decl. ¶13; Exh. 16 (Pallies_0406]). The Social Security Administration approved his claim for benefits. Pallies Dep. 136:20-137:3; Svanfeldt ¶13; Exh. 16 (Notice of Award).

## III.   ARGUMENT AND AUTHORITIES

### A.   Summary Judgment Standard

Summary judgment should be granted where "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. ("F.R.C.P.") 56. Once a defendant informs the district court of the basis for its motion, the plaintiff must present "significant probative evidence tending to support its claim." *Intel Corp. v. Hartford Accident & Indem. Co.*, 952 F.2d 1551, 1558 (9th Cir. 1991). If the evidence in the record "could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial,'" and the motion should be granted. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). A plaintiff may not defeat summary judgment merely by relying on her pleadings or on conclusory statements. F.R.C.P. 56(e). A plaintiff also may not avoid summary judgment by pointing to a "mere scintilla" of evidence; rather, a plaintiff must affirmatively present specific admissible evidence sufficient to enable a reasonable trier of fact to find in his or her favor.

MOTION FOR
SUMMARY JUDGMENT -- 14
(No. 2:16-cv-1437)

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
ONE MARKET
SPEAR STREET TOWER
SAN FRANCISCO, CA 94105-1596
+1.415.442.1000

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986); *see also Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000) ("A scintilla of evidence or evidence that is merely colorable or not significantly probative does not present a genuine issue of material fact.").

Summary judgment is an "integral part of the Federal Rules" designed for "every action." *Celotex*, 477 U.S. at 327 (quoting F.R.C.P. 1).  This principal applies equally in employment discrimination cases, and the U.S. Supreme Court has reiterated that district courts should not "treat discrimination [cases] differently from other ultimate questions of fact."  *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 148 (2000).  Thus, "[t]here is no 'discrimination case exception' to the application of summary judgment, which is a useful tool to determine whether any case, including one alleging discrimination, merits a trial."  *Torgerson v. City of Rochester*, 643 F.3d 1031, 1043 (8th Cir.), *cert. denied*, 565 U.S. 978 (2011).

**B.      Pallies' Disability Discrimination Claims Under Federal and Washington Law Fail.**

Pallies has brought discrimination claims under the ADA and WLAD based on the theory that Boeing "discriminated against and failed to accommodate Plaintiff by moving Plaintiff from the dispatch position back to the hook tender position and by not placing Plaintiff in a new position within Boeing."  Compl. ¶¶ 4.3, 5.1, 5.3.  When evaluating disability discrimination claims for summary judgment, both Washington courts and federal courts use the three-part burden shifting scheme articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *Anica v. Wal-Mart Stores, Inc.*, 120 Wn. App. 481, 488 (2004); *Snead v. Metro. Prop. & Cas. Ins. Co.*, 237 F.3d 1080, 1093 (9th Cir. 2001). To survive summary judgment under *McDonnell Douglas*, a plaintiff must first come forward with a *prima facie* case of discrimination by showing that (1) he is disabled; (2) he is a qualified individual, meaning he can perform the essential functions of his job; and (3) his employment was terminated because of his disability. *Nunes v. Wal-Mart Stores, Inc.*, 164 F.3d 1243, 1246 (9th Cir. 1999); *Roeber v. Dowty*

MOTION FOR
SUMMARY JUDGMENT -- 15
(No. 2:16-cv-1437)

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
ONE MARKET
SPEAR STREET TOWER
SAN FRANCISCO, CA  94105-1596
+1.415.442.1000

*Aerospace Yakima*, 116 Wn. App. 127, 135 (2003).

> **1.  Pallies Was Not "Qualified" For Purposes Of The ADA or WLAD Because He Could Not Perform The Essential Functions Of His Job Or Any Vacant Job.**

Pallies cannot establish a case under either the ADA or WLAD because he admits that no accommodation would have permitted him to perform his Hooktender job or any vacant position at Boeing.   Pallies Dep. 22:21-23:2; 28:5-8; Exh. 5; 59:17-62:14; Exh. 6; 87:22-88:1; 86:19-24; Exh. 17.  In fact, Pallies has repeatedly admitted—in his sworn deposition testimony and in his claim for Social Security Disability Insurance ("SSDI")—that he was completely disabled and unable to perform his job or any job other than "sedentary work" when his Boeing employment ended.  Svanfeldt Decl. ¶13; Exh 16.

SSDI provides benefits only to a person with a disability so severe that he is "unable to do his previous work" and "cannot . . . engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 423(d)(2)(A). "Thus, the factual contentions of those seeking relief under both [SSDI and disability-discrimination laws] roughly appear to be 'I cannot work' (in order to receive SSDI benefits) and 'I can work' (to establish [a disability-discrimination claim])." *EEOC v. Greater Baltimore Med. Ctr., Inc.*, 769 F. Supp. 2d 843, 849 (D. Md. 2011).  Although a plaintiff's claim under the ADA is not automatically barred because of an SSDI claim, an ADA claim can survive a defendant's motion for summary judgment only if the plaintiff can "explain why that SSDI contention is consistent with [his] ADA claim that [he] could 'perform the essential functions' of [his] previous job, at least with 'reasonable accommodation.'" *Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 798, 807 (1999).  "[A] plaintiff may 'not simply ignore the apparent contradiction,' or 'create a genuine issue of fact . . . simply by contradicting his or her own previous sworn statement . . . without explaining the contradiction or attempting to resolve the disparity.'" *EEOC v. Greater Baltimore Med. Ctr., Inc.*, 769 F. Supp. 2d at 850 (quoting *Cleveland*, 526 U.S. 795 at 806).

MOTION FOR
SUMMARY JUDGMENT -- 16
(No. 2:16-cv-1437)

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
ONE MARKET
SPEAR STREET TOWER
SAN FRANCISCO, CA 94105-1596
+1.415.442.1000

**2.    Boeing Was Not Obligated To Put Pallies, Rather Than Tunks, In The Crane Dispatch Job In January 2015 Because Pallies Was Able To Perform The Hooktender Job At That Time And Tunks Was Not.**

Pallies' theory that he, and not Tunks, should have been reassigned in January 2015 to the Crane Dispatch job to accommodate a condition that "might" substantially limit his ability to perform in his job "in the future" (Pallies Motion to Compel Discovery. 2:23-27) also fails under the ADA and WLAD because Pallies admits that in January 2015 his condition did not prevent him from performing his Hooktender job, and in fact he continued to effectively perform the essential functions of the job for another eight months.  Pallies Dep. 84:20-85:3; Exh. 16; 77:11-25; 78:1-8; 81:23-82:6; 22:15-22; 28:5-29:6; 78:15-20; 82:4-6; 83:7-84:15; Exh. 15; Svanfeldt Decl. ¶ 11; Exh. 14 (1/21/15 Medical Certification Form); Pallies Dep. 83:1-13; Exh. 14]; Steel Dep.") 27:24-28:21; Ex. 1 (another eight months).  Boeing thus had a legitimate non-discriminatory reason for removing Pallies from the Crane Dispatch job in January 2015 because it gave the position to a *disabled* employee with more seniority.  Pallies Dep. 40:13-20; 55:8-12; 66:8-10; 78:15-20; 114:1-4.

**3.    Pallies' Claim Under The ADA That He Should Have Been Given The Dispatch Job In January 2015 Is Also Barred Because Pallies Did Not Timely Exhaust His Administrative Remedies.**

Pallies' claim that Boeing discriminated against him in violation of the ADA by putting Tunks in the Dispatch job in January 2015 is also barred because Pallies did not timely exhaust his administrative remedies it under the ADA.  Pallies did not file an administrative charge with the EEOC within the mandatory 180 day period of this claim.  He filed it more than 500 days later.  Svanfeldt Decl. ¶9; Exh. 10.  *Davis v. Boeing Co.*, No. C11-1033-JCC, 2012 WL 5248752, at *5 (W.D. Wash. Oct. 23, 2012); *Lee v. AFT-Yakima*, No. CV-09-3112-EFS,  2011 WL 2181808, at *10 (E.D. Wash. June 3, 2011).

**4.    Boeing Did Not Discriminate Against Pallies By Terminating His Employment Because He Was Unable To Perform Any Positions In Light Of His Restrictions.**

Pallies admits that at the time of his termination in January 2016 he could not perform the

MOTION FOR
SUMMARY JUDGMENT -- 17
(No. 2:16-cv-1437)

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
ONE MARKET
SPEAR STREET TOWER
SAN FRANCISCO, CA  94105-1596
+1.415.442.1000

essential functions of his Hooktender job with or without reasonable accommodation, and further admits that Boeing could not locate a different job that was vacant and would accommodate his work restrictions. Pallies Dep. 22:21-23:2; 28:5-8; Exh. 5; 59:17-62:14; Exh. 6; 87:22-88:1; 86:19-24; Exh. 17. He further admits that Boeing tried to reassign him to his preferred accommodation—a Crane Dispatch position—but that it was not vacant. Pallies Dep. 89:2-13;14-25; 90:1-19; 91:18-24; Exh. 20. Nor could Boeing reassign Pallies to the Crane Dispatch position without violating the CBA since Pallies admits that reassigning him to dispatch would have required Boeing to displace an employee with more seniority and that this would have violated the CBA. Pallies Dep. 89:14-25 (Q: And your—so your understanding was that you could not be placed in the crane dispatch position, because there were no vacancies? A: I understood that, yes. Q: And did you also understand that you were more junior than the other crane dispatch employees? A: Yes. Q: And did you also understand that Boeing could not bump any other crane dispatch employees without it violating the seniority position—provision in the Collective Bargaining Agreement? A: Yes.).

Accordingly, Pallies has no basis to reasonably assert that Boeing's stated reason for his dismissal (medical layoff) is a pretext for discrimination, and his disability discrimination claims should be dismissed.

### C.    Pallies' Reasonable Accommodation Claim Fails.

Both the ADA and the WLAD require employers to make reasonable accommodations to allow disabled individuals to perform the essential functions of their positions unless doing so would be an undue hardship. *US Airways, Inc. v. Barnett*, 535 U.S. 391, 396 (2002) (citing 42 U.S.C. § 12112(b) (5) (A)); *Riehl v, Foodmaker, Inc*., 152 Wn.2d 138, 145 (2004). To establish a *prima facie* case for a failure to accommodate claim under the ADA and the WLAD, Pallies must show that: (1) he had a disability that substantially limited his ability to perform the job; (2) he was qualified to perform the "essential functions" of the job with or without reasonable

MOTION FOR
SUMMARY JUDGMENT -- 18
(No. 2:16-cv-1437)

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
ONE MARKET
SPEAR STREET TOWER
SAN FRANCISCO, CA 94105-1596
+1.415.442.1000

accommodation; (3) he gave Boeing notice of the disability and its substantial limitations; and (4) upon notice, the employer failed to affirmatively adopt measures that were available to it and medically necessary to accommodate the disability. *McDaniels v. Grp. Health Co-op.*, 57 F. Supp. 3d 1300, 1314 (W.D. Wash. 2014) ("Judicial interpretations of the ADA and the WLAD differ slightly in the way they phrase the elements of an accommodation claim under the two statutes, but the basic requirements are essentially the same."). Although an employer is obligated to provide a qualified individual with reasonable accommodation, there is no obligation to provide the specific accommodation that is preferred or desired by the employee. *Harrell v. State of Washington*, 170 Wn.App. 386 (2012) ("And an employer need not necessarily grant an employee's specific request for accommodation but, rather, an employer need only reasonably accommodate the disability"); *Zivkovic v. S. Calif. Edison Co.*, 302 F.3d 1080, 1089 (9th Cir. 2002). A reasonable accommodation plaintiff "has the burden of showing that a specific reasonable accommodation was available to the employer at the time the employee's physical limitation became known . . . ." *Pulcino v. Fed. Express Corp.*, 141 Wn. 2d 629, 643 (2000) (emphasis added); *see also Mustafa v. Clark Cty. Sch. Dist.*, 157 F.3d 1169, 1176 (9th Cir. 1998) (the plaintiff "bears the initial burden of showing that the suggested accommodation would, more probably than not, have resulted in his ability to perform the essential functions of his job").

Here, Pallies' accommodation claim fails because: (1) it is undisputed that Pallies' permanent medical restrictions from September 30, 2015 prevented him from performing the essential functions of his job as a Hooktender at the time of his medical layoff; (2) Boeing engaged in the interactive process with Pallies, but was unable to reassign Pallies to any vacant position for which he was qualified with or without accommodation because of the severity of his work restrictions.

MOTION FOR
SUMMARY JUDGMENT -- 19
(No. 2:16-cv-1437)

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
ONE MARKET
SPEAR STREET TOWER
SAN FRANCISCO, CA 94105-1596
+1.415.442.1000

### 1.   Pallies Cannot Show that a Reasonable Accommodation Was Available.

To establish an employer's failure to accommodate, "the plaintiff employee has the burden of showing that a *specific* reasonable accommodation was available to the employer at the time the employee's physical limitation became known." *MacSuga v. Cty. of Spokane*, 97 Wn. App. 435, 442 (1999) (emphasis added).  A disabled employee is not entitled to *any* accommodation from the employer; rather, the accommodation must be *reasonable* and not alter the fundamental requirements of the position.  *Id.* at 443 ("If the only successful accommodation is to eliminate essential functions, then the employee cannot perform the essential functions of the job with reasonable accommodation.").  The Washington Supreme Court summarized an employer's reasonable accommodation requirements under the WLAD as follows:

> Reassignment is one method of accommodation. When an employee bases a claim on the employer's failure to reassign to a different position, the **employee** must prove that he or she was qualified to fill a **vacant** position, and that the employer failed to take affirmative measures to make such job opportunity known to the employee and to determine whether the employee was in fact qualified for such position.  An employer, however, is **not** required to reassign an employee to a position that is already occupied, to create a new position, to alter the fundamental nature of the job, or [to] reassign essential job functions.

*Pulcino*, 141 Wash. 2d at 643 (internal citations omitted; emphasis added).

Here, Pallies admits that, as of September 30, 2015, no reasonable accommodation was available that would have enabled him to perform his Hooktender job at Boeing or any vacant position at Boeing for which he was qualified.  Pallies Dep. 22:21-23:2; 28:5-8; Exh. 5; 59:17-62:14; Exh. 6; 87:22-88:1; 86:19-24; Exh. 17.   Boeing looked for available positions that Pallies could perform *each week over the course of four months*.  Pallies Dep. Exh. 18 [*see* BOEING 000158-165]; Hubbard Dep. 29:1-30:19. After analyzing more than 40 vacant positions during this time, none were located.  Pallies Dep. Exh. 18 [*see* BOEING 000158-165]; Hubbard Dep. 29:1-30:19. When Pallies asked Boeing to look into the Crane Dispatch position as part of the Reassignment Process, the Reassignment Focal learned that this position was not vacant and that

MOTION FOR
SUMMARY JUDGMENT -- 20
(No. 2:16-cv-1437)

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
ONE MARKET
SPEAR STREET TOWER
SAN FRANCISCO, CA  94105-1596
+1.415.442.1000

and all nine (9) of the Crane Dispatchers with contractual seniority rights to the position had more seniority than Pallies pursuant to the CBA.  Pallies Dep. 89:6-25; 91:2-24.  Pallies has not identified any *vacant* positions that he could have performed.

**2.      Reassignment To A Crane Dispatcher Position Was Not Reasonable.**

As a matter of law, an employer is not required to reassign a disabled employee to a position that is already occupied (i.e., "bump" someone) or to create a new position. *Staub v. Boeing Co.*, 919 F. Supp. 366, 371 (W.D. Wash. 1996) ("The ADA and the Washington Law Against Discrimination do not place a burden on employers to fire other employees, to promote the disabled to positions for which they are not qualified, or to create new jobs."); *MacSuga*, 97 Wash. App. At 435 (an employer is not "required to alter the fundamental nature of the job or eliminate or reassign essential job functions") (internal citations omitted).  Moreover, an employer is not obligated to violate the seniority provisions of a collective bargaining agreement to accommodate a disabled employee. *Willis v. Pac. Mar. Ass'n,* 244 F.3d 675, 677 (9th Cir. 2001), *as amended* (Mar. 27, 2001).  In fact, the Ninth Circuit has found that such an accommodation is *per se* unreasonable. *Id.*

Here, after Boeing determined that Pallies could not perform his Hooktender duties with or without an accommodation, Boeing tried to reassign Pallies in his preferred accommodation, the Crane Dispatch position but it was not vacant.  Pallies Dep. 88:22-89:13; 89:14-17.  The pool for the Crane Dispatcher position is very small within the entire Puget Sound based on business need and collective bargaining between Boeing and the Union.  White Decl. ¶ 12].  Accommodating Pallies with the Crane Dispatcher position would have required Boeing to reassign Pallies to an already occupied position, to create a new position or to displace one of the other employees already working as a Crane Dispatcher. *Id.*  All of these options would have disrupted business operations, adversely impacted other employees' ability to do their job, made

MOTION FOR
SUMMARY JUDGMENT -- 21
(No. 2:16-cv-1437)

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
ONE MARKET
SPEAR STREET TOWER
SAN FRANCISCO, CA  94105-1596
+1.415.442.1000

employees' jobs more onerous, unduly burdened the expectation of other employees and created resentment among employees. *Id.*

In addition, Pallies admits that reassignment to a Crane Dispatch position or creating a new position to accommodate Pallies would have required Boeing to violate valid seniority rules of the CBA between Boeing and the Union, as well as the CBA's valid Reassignment Process. Pallies Dep. 89:14-25. Accommodating Pallies with a Crane Dispatch position would have required Boeing to impinge on the rights of other employees under the CBA. Further, adding a Crane Dispatch position also would have caused significant difficulty and expense because it would have required Boeing to add an excessive number of Crane Dispatcher positions to a pool that was already limited in size when there was no business need to double up on the position. White Decl. ¶¶ 12, 14.

Further, creating a Crane Dispatch position for Pallies also would have violated Boeing's Reasonable Accommodation Policy (PRO-784), which provides that "there is no obligation to create a position as an accommodation" and "reassignment may only occur to a vacant position. Boeing 000055-70. A position is not 'vacant' if another employee has [seniority] rights to that position under the applicable collective bargaining agreement." *Id.*

To the extent Pallies now contends that he made a request for accommodation in January 2015 (he admits he did not), the request was not reasonable because, at this time, Pallies did not have a condition that substantially limited his ability to perform his Hooktender job. The law does not require that Boeing give Pallies a different job based on a condition that *might* prevent him from performing in his job *in the future*. *See McDaniels*, 57 F. Supp. 3d at 1314 (for a failure to accommodate claim under the ADA and the WLAD, an employee must have "a disability that substantially limited his ability to perform the job"). By Pallies' own admission, Pallies did not have such a condition until September 30, 2015. Pallies Dep. 84:20-85:3 and Exh. 16. In fact, Pallies had been released to Hooktender full duty without any limitation four

MOTION FOR
SUMMARY JUDGMENT -- 22
(No. 2:16-cv-1437)

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
ONE MARKET
SPEAR STREET TOWER
SAN FRANCISCO, CA 94105-1596
+1.415.442.1000

times before becoming unqualified, including in November 2014 and on January 11, 2015 and January 21, 2015.  Moreover, after Boeing accommodated Tunks with the dispatch job, Pallies went back to his Hooktender job for another eight months without any restriction.

Pallies' request to be accommodated with the Crane Dispatcher position in January 2015, before he had a condition that substantially limited his ability to perform in his base job as a Hooktender, also was not reasonable because the assignment could have violated the contractual and legal rights of Tunks who, at the time, did have a condition that substantially limited his ability to perform his job and had requested reassignment to the Crane Dispatch job as an accommodation.  Pursuant to the ADA and PRO-784, Boeing gives preference to employees with conditions that substantially limit their ability to perform their job.  Accordingly, Boeing decided to give the vacant Crane Dispatch job to Tunks, an employee with more seniority than Pallies who had work restrictions that precluded him from performing in his job with or without reasonable accommodation.  Hubbard Dep. 12:3-17; 23:11-15; 27:18-22; 40:14-42:11; Exh. 13.

For the foregoing reasons, reassignment to a Crane Dispatch job was not reasonable in January 2015 or January 2016.

**D.    Boeing Engaged in the  Interactive Process with Pallies.**

Finally, Pallies claims that Boeing violated WLAD by failing to engage in interactive process in good faith.  Compl. ¶ 4.4.  This claim fails because Pallies there is no claim for failure to engage in the interactive process without evidence that any reasonable accommodation was possible.  Under the WLAD, "failure to engage in an interactive process does not form the basis of a disability discrimination claim in the absence of evidence that accommodation was possible." *Fey v. State*, 174 Wn. App. 435, 453, (2013).  The interactive process is a means to an end—it is the "best way to determine a reasonable accommodation." *MacSuga*, 97 Wn.App. at 443. The interactive process "is not an end in and of itself." *Washburn v. Gymboree Retail Stores, Inc.,* No. C11-822RSL, 2012 WL 3818540, at *10 (W.D. Wash. Sept. 4, 2012).

MOTION FOR
SUMMARY JUDGMENT -- 23
(No. 2:16-cv-1437)

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
ONE MARKET
SPEAR STREET TOWER
SAN FRANCISCO, CA  94105-1596
+1.415.442.1000

Second, the undisputed evidence confirms that Boeing fully engaged in weekly interactive meetings for four months.  After Boeing determined that Pallies could not perform the Hooktender position with or without accommodations, Boeing met with Pallies several times to discuss possible reassignment to a vacant position for which he was qualified. Pallies Dep. 95:5-105:12.  Boeing reviewed more than 40 available jobs with Pallies, but it is undisputed that Pallies could not perform the essential functions of any of these jobs with or without an accommodation.  Pallies Dep. 20:9-21:8, Exh. 4 [BOEING 000597]; Pallies Dep. 22:21-23:2; 28:5-8; Exh. 5; 59:17-62:14; Exh. 6; 87:22-88:1; 86:19-24; Exh. 17; *see also* Svanfeldt Decl. ¶13; Exh. 16.

## IV.     CONCLUSION

Pallies' discrimination claim based on the failure to give him the Dispatch job in January 2015 fails because Boeing gave the job to a disabled employee who was permanently restricted from performing as a Hooktender with or without reasonable accommodation, and Pallies was able to, and did, perform the Hooktender job.  Once Pallies was issued permanent medical restrictions which prohibited him from working as a Hooktender in September 2015, Boeing met its legal obligation under the WLAD and ADA to look for vacant position that Pallies could perform.  However, Pallies was unable to perform the essential functions of any vacant jobs.  For all of the above-stated reasons, Boeing respectfully requests that the Court enter judgment in its favor and against Pallies.

MOTION FOR
SUMMARY JUDGMENT -- 24
(No. 2:16-cv-1437)

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
ONE MARKET
SPEAR STREET TOWER
SAN FRANCISCO, CA  94105-1596
+1.415.442.1000

DATED this 5th day of July, 2017.

_s/Melinda S. Riechert_
Melinda S. Riechert
(admitted *pro hac vice*)
Jennifer Svanfeldt
(admitted *pro hac vice*)
MORGAN, LEWIS & BOCKIUS LLP
3000 El Camino Real, Suite 700
Palo Alto, CA 94306
Tel: (650) 843-4000
Fax:  (650) 843-4001
Email: melinda.riechert@morganlewis.com


_s/Laurence A. Shapero_
Laurence A. Shapero, WSBA #31301
FOX ROTHSCHILD LLP
1001 Fourth Avenue, #4500
Seattle, WA 98154
Phone: 206-389-1661
Fax: 206-389-1708
Email: lshapero@foxrothschild.com

*Attorneys for Defendant The Boeing Company*

MOTION FOR
SUMMARY JUDGMENT -- 25
(No. 2:16-cv-1437)

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
ONE MARKET
SPEAR STREET TOWER
SAN FRANCISCO, CA  94105-1596
+1.415.442.1000

## CERTIFICATE OF SERVICE

I, Michele Knox-Thomas, am a citizen of the United States and employed in San Francisco County, California. I am over the age of eighteen years and not a party to the within entitled action. My business address is One Market, Spear Street Tower, San Francisco, California 94105. On July 5, 2017, I caused a copy of the following document to be served via CM/ECF on the following:

**DEFENDANT THE BOEING COMPANY'S MOTION FOR SUMMARY JUDGMENT OR IN THE ALTERNATIVE PARTIAL SUMMARY JUDGMENT**

to be served on the following:

Matthew J. Bean
Bean Law Group
2200 6th Ave, Ste 835
Seattle, WA 98121
206.522.0618
206.524.3751 fax
matt@beanlawgroup.com
cody@beanlawgroup.com

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Signed this 5th day of July, 2017, at San Francisco, California.

_____
Michele Knox-Thomas

CERTIFICATE OF SERVICE
- (NO. 2:16-CV-01437-RSL )

MORGAN, LEWIS & BOCKIUS LLP
Attorneys at Law
One Market, Spear Street Tower
San Francisco, CA 94105-1596
+1.415.442.1000