+

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

DAVID PALLIES, an individual,

                         Plaintiff,

    v.

THE BOEING COMPANY, a Delaware corporation,

                         Defendant,

Case No. C16-01437RSL

ORDER DENYING PLAINTIFF'S MOTION TO COMPEL DISCOVERY

**I. INTRODUCTION**

       This matter comes before the Court on Plaintiff's motion to compel discovery. Dkt. #20. Plaintiff claims that the Defendant should be compelled to allow deposition questions about group meetings with witnesses where defense counsel was present. Dkt. #20 at 1. Plaintiff contends that these group meetings do not fall under attorney-client privilege since they are conversations between witnesses and because a non-client was present. Dkt. #20 at 1-2. For the reasons set forth below, the Defendant's motion to compel discovery is DENIED.

**II. BACKGROUND**

       Plaintiff David Pallies was hired as a crane operator/hooktender by Defendant Boeing Company in December 2010. Dkt. #20 at 2. Plaintiff was diagnosed with Charcot Marie Tooth disorder in June of 2014, a degenerative disorder which affects a person's ability to use their

ORDER DENYING PLAINTIFF'S MOTION TO COMPEL DISCOVERY- 1

extremities. Dkt. #20 at 2. Plaintiff allegedly informed his managers immediately of his diagnosis and asked to find a new, less physically demanding position such as crane dispatch. Dkt. #1 at 2-3. When a dispatch position opened up in June 2014, Plaintiff successfully requested a transfer. Dkt. #1 at 3. In July, he started working in dispatch, where he performed well. Dkt. #20 at 2. That changed after another crane operator suffered a heart attack and could no longer work in the presence of electro-magnets. Dkt. #20 at 2-3. That crane operator took Plaintiff's position in dispatch, and Plaintiff returned to his old position. Dkt. #20 at 3. He was entered into Boeing's disability reassignment process, but Boeing was unable to locate a suitable position. Dkt. #20 at 3. In January 2016, he was medically laid off. Dkt. #20 at 3.

Defendant's managers denied in their depositions that Plaintiff mentioned his medical condition before late 2014. Dkt. #20 at 3. Plaintiff alleges that management was informed of his disability in the summer of 2014, that he was informally accommodated at that time, and that Defendant's documents confirm that fact. Dkt. #20 at 3. Plaintiff believes witness testimony has been influenced by the statements of other witnesses in group preparation to "get their stories straight" and seeks to compel discovery of those group preparations. Dkt. #20 at 3. Plaintiff contends that the presence of Glenda Hubbard, an allegedly non-client witness and former employee of Boeing, has waived any attorney client privilege that could have existed between Boeing's counsel and its current employees. Dkt. #20 at 9.

### III. ANALYSIS

Plaintiff argues that the attorney-client privilege does not protect deposition questions about the group meetings defense counsel had with witnesses. He alleges that the witnesses spoke with one another for a purpose other than to seek legal advice and therefore their conversations are not privileged regardless of counsel's presence.[1] Dkt. #20 at 1. He further alleges that there were non-

---

[1] To be sure, at trial Plaintiff will be allowed to cross-examine Boeing witnesses about the conversations they may have had about Mr. Pallies. Defendant's objection was limited to the pre-deposition session with counsel.

ORDER DENYING PLAINTIFF'S MOTION TO COMPEL DISCOVERY- 2

clients present in the meeting who did not retain defense counsel to represent them and so their conversations cannot be privileged. Dkt. #20 at 2. Defendant responds that all the witnesses present at the deposition preparations were there to seek legal advice and to be represented by Boeing's counsel as company employees, and that they understood their conversations with counsel would be privileged. Dkt. # 24 at 1. Defendant claims that all witnesses present were clients represented by their attorneys since they were either current or former Boeing employees and therefore the attorney-client privilege extends to them. Dkt. #24 at 6.

A party asserting the attorney-client privilege bears "the burden of establishing the existence of an attorney-client relationship and the privileged nature of the communication." United States v. Graf, 610 F.3d 1148, 1156 (9th Cir. 2010). Since the attorney-client privilege impedes full discovery of the truth, it should be strictly construed. Id. The Ninth Circuit has established an eight-factor test to determine whether communications are covered by attorney-client privilege and thereby immune from discovery:

> (1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) unless the protection be waived.

In re Grand Jury Investigation, 974 F.2d 1068, 1071 n.2 (9th Cir. 1992). The party asserting the privilege must prove each essential element of the test to justify the attorney-client privilege. United States v. Munoz, 233 F.3d 1117, 1128 (9th Cir. 2000). Since it withholds relevant information from the fact-finder, the attorney-client privilege can only be extended to protect disclosures that are necessary to obtain legal advice and that might not have been made otherwise. Fisher v. United States, 425 U.S. 391, 403 (1976).

The Supreme Court has held that the attorney-client privilege applies to communications between corporate employees and the corporation's attorneys, no matter the employee's position, as long as "the communications concerned matters within the scope of the employees' corporate duties, and the employees themselves were sufficiently aware that they were being questioned in order that the corporation could obtain legal advice." Upjohn Co. v. United States, 449 U.S. 383,

ORDER DENYING PLAINTIFF'S MOTION TO COMPEL DISCOVERY- 3

394 (1981). The Ninth Circuit has further held that this attorney-client privilege extends to former employees of a corporation as well as current ones, as long as the information is relevant and needed for the attorney to advise their client. Admiral Ins. Co. v. U.S. Dist. Court for Dist. Of Arizona, 881 F.2d 1486, 1493 (9th Cir. 1989).

1. Witness Statements and Deposition Preparations

Plaintiff claims the attorney-client privilege does not apply to the group deposition preparations between various witnesses and Boeing's attorneys because statements between witnesses were not made for the purpose of securing legal advice, but were instead made to coordinate and influence witness testimony. Dkt. #20 at 6. Plaintiff argues that he should be allowed to depose witnesses regarding their communications with each other in the group depositions preparation meetings, but not with Boeing's counsel, since Upjohn only protects the communications between employees and counsel for the purpose of securing legal advice and the group deposition preparations included statements between witnesses that were not made to secure legal advice but were instead made to coordinate and influence witness testimony. Dkt. #20 at 6-7. However, this argument is spurious since there is no evidence that any communications between employees happened during group deposition preparations that were not part of their attempts to seek legal advice from Defendant's counsel. Each of the deposed witnesses signed declarations stating that they sought out Boeing's counsel for the purpose of being represented by counsel and receiving legal advice regarding depositions, advice considered confidential. Dkts. #25-32 at 2. Defendant's attorney, Jennifer Svanfeldt, also signed a declaration stating that she represented each of the various employees to prepare them for deposition and extended the attorney-client privilege to them to the extent necessary to give them legal advice. Dkt. #33 at 3. The eight-factor test necessary to establish the attorney-client privilege has been met here because all the witnesses (1) sought legal advice (2) from Ms. Svanfeldt and (3) communicated with her (4-5) for that purpose in confidence with an expectation of the attorney-client privilege and therefore (6) are permanently protected (7) from disclosure by anyone since (8) they have not waived their protection. See In re Grand Jury Investigation, 974 F.2d at 1071 n.2. Therefore, it can be clearly established that the

ORDER DENYING PLAINTIFF'S MOTION TO COMPEL DISCOVERY- 4

Defendant has proved that the attorney-client privilege applies to these deposition preparation meetings.

Plaintiff next claims that the attorney-client privilege should be abrogated here because two witnesses have allegedly changed their statements subsequent to deposition preparation. The argument is that there were statements between witnesses for the purposes of "getting their story straight," which would not be protected under the privilege. However, the evidence given for the supposed alteration of stories is insufficient to compel discovery of these meetings. The two witnesses accused of changing their stories, Brandon Cowell and Casey White, do not contradict themselves in their depositions but simply answer the questions about when Plaintiff first told them of his degenerative condition and disability needs. Plaintiff does not cite any binding case law for the proposition that the attorney-client privilege can be abrogated by the presence of multiple witnesses in deposition preparations. He instead cites to a Maryland Court of Appeals case, State v. Earp, 571 A.2d 1227 (Md. 1990), which cautions attorneys to exercise care to only extract and not provide information to witnesses to influence their testimony. Not only is this case not binding upon this Court, but it does not address anything related to when it is appropriate for a court to invalidate the attorney-client privilege. Instead, it affirmed a decision where a witness's testimony was allowed despite having first seen a tape of the defendant's deposition. Id. at 1235. The Court therefore rejects Plaintiff's arguments that the attorney-client privilege does not cover any such disclosures in that meeting.

2. Glenda Hubbard and Former Employees

Plaintiff further argues that former Boeing employee Glenda Hubbard's communications with Boeing's counsel are not privileged because she did not directly retain an attorney for her deposition. Dkt. #20 at 8-9. Defendant responds that Hubbard had created an implied contract between herself and Boeing's attorney by agreeing to testify, regardless of the fact that there was no written contract or fee paid by Hubbard to Boeing's counsel. Dkt. #24 at 10. In her deposition, Hubbard said that she did not know what was meant by "retaining" an attorney and maintained that she had not paid for an attorney that day. Dkt. #20 at 8. Plaintiff claims Ms. Svandfeldt was

ORDER DENYING PLAINTIFF'S MOTION TO COMPEL DISCOVERY- 5

representing Boeing at the deposition, not Hubbard, and therefore there can be no attorney-client privilege between them. Dkt. #20 at 9.

As a former Boeing employee, Glenda Hubbard is entitled to the attorney-client privilege with the corporation's counsel so long as she gave information that is relevant to the case. Admiral Ins. Co., 881 F.2d at 1493. The Ninth Circuit has held that a formal contract is not necessary to show an attorney-client relationship because all that is needed is an attorney rendering advice to a client seeking legal counsel. Waggoner v. Snow, Becker, Kroll, Klaris & Krauss, 991 F.2d 1501, 1505 (9th Cir. 1993). The payment of a fee to an attorney by a client is also not dispositive of the existence of a privilege relationship between them. Omni Innovations, LLC v. Ascentive, LLC, 2006 WL 3486806, at *2 (W.D. Wash. Nov. 29, 2006).

Plaintiff claims that since Ms. Hubbard said in her depositions that she didn't know what it meant to retain a lawyer and had not paid for one, her communications with Ms. Svanfeldt fall outside the attorney-client privilege. Dkt. #20 at 8. The Court rejects this argument. Ms. Hubbard maintains in her declaration that Plaintiff's counsel's request for a deposition spurred her to ask Ms. Svanfeldt to represent her there. Dkt. #29 at 2. She maintains that she "sought Ms. Svanfeldt's legal advice and assistance regarding my deposition." Dkt. #29 at 2. Ms. Hubbard also says it was her understanding that her communications with Ms. Svanfeldt were "made in confidence and were protected by attorney-client privilege." Dkt. #29 at 2. While Ms. Hubbard made no formal contract or payments to Ms. Svanfeldt, these are not necessary conditions to establish an attorney-client relationship or the privilege it entails. She actively sought representation from Ms. Svanfeldt during her deposition and was entitled to do so as a former employee of Boeing. Ms. Hubbard's lack of knowledge about the definition of the word "retained" is not sufficient evidence to invalidate the attorney-client privilege.

Given that the Court has determined that there was an attorney-client relationship between Ms. Svanfeldt and Ms. Hubbard regarding the deposition preparation, Plaintiff's argument that the group meeting with Ms. Hubbard waived any attorney-client privilege due to the presence of a third party fails.

ORDER DENYING PLAINTIFF'S MOTION TO COMPEL DISCOVERY- 6

## IV. CONCLUSION

For the foregoing reasons, Plaintiff's motion to compel discovery is DENIED.

Dated this 6th day of September, 2017.

*Robert S. Lasnik*
Robert S. Lasnik
United States District Judge

ORDER DENYING PLAINTIFF'S MOTION TO COMPEL DISCOVERY- 7