1
2
3
4
5
6
7                    UNITED STATES DISTRICT COURT
                    WESTERN DISTRICT OF WASHINGTON
8                              AT SEATTLE

9
   DAVID PALLIES,                          Case No. C16-1437RSL
10
                    Plaintiff,
11                                          ORDER GRANTING
                 v.                         MOTION FOR SUMMARY
12                                          JUDGMENT
   THE BOEING COMPANY,
13
                    Defendant.
14

15        This matter comes before the Court on defendant's "Motion for Summary Judgment or in

16   the Alternative Partial Summary Judgment." Dkt. # 35. The Court has reviewed the motion, the

17   parties' memoranda, the associated filings, and the remainder of the record.[1] For the following

18   reasons, the motion is GRANTED.

19                            I.    BACKGROUND

20        This case stems from plaintiff David Pallies's unfortunate development of a neurological

21   disorder that eventually prevented him from doing his job at the Boeing Company. Pallies

22   started working for Boeing in December 2010 as a Crane Operator Hooktender. Hooktenders

23   operate cranes to lift, move, and position aircraft parts, equipment, and other materials. In early

24   2012, Pallies began to feel pain and numbness in his arms but continued working normally in his

25   position. Pallies Decl. (Dkt. # 38) ¶¶ 2–4. In May 2014, Pallies's physician, Dr. Roger Sharf,

26

27        [1]      In a surreply, Dkt. # 42, Pallies asks the Court to strike two items from Boeing's reply.
28   Striking those points is not warranted, nor would it change the Court's conclusion on this motion.

diagnosed him with peripheral polyneuropathy and told him he may have Charcot-Marie-Toothe disease ("CMT"), a degenerative nerve disorder that causes pain and weakness in a person's limbs and extremities. Sharf Decl. (Dkt. # 23) ¶ 4.

According to Pallies, he informed his primary managers Brandon Cowell and Stephen Lynch of his condition and its prognosis the next work day,[2] but he did not seek out Boeing Medical or the company's Disability Management division. Pallies Decl. ¶ 5. Within two months, a position as his shift's Crane Operator Dispatch became available. Id. ¶ 6. Pallies sought the position, because it was less physically demanding than hooktender and would pose fewer neuropathy-related difficulties. Id. In August 2014, he began regularly filling the dispatch job. White Decl. (Dkt. # 35-5) ¶ 8. The assignment was temporary, but Pallies's managers indicated he might be permanently assigned if he proved himself. Pallies Decl. ¶ 7.

In November 2014, a hooktender on a different shift named Brian Tunks returned to work after a heart attack. Stevens Decl. (Dkt. # 35-4) ¶ 7. The heart attack left Tunks with a medical restriction that prohibited him from working as a hooktender. Id. Unlike Pallies, Tunks had a formal medical restriction and had entered Boeing's official reassignment protocol. Id. ¶¶ 6–8. Although Pallies had been working in the dispatch job for some time, his assignment was not permanent and the position was still technically vacant. See id. ¶¶ 7–8. Boeing policy provided that Tunks be assigned to the position.

That assignment reflected Boeing policy in two ways. First, the Collective Bargaining Agreement ("CBA") negotiated with Tunks's and Pallies's union gave the senior employee priority, see Dkt. # 35-5 at 28, and Tunks was the senior employee, Stevens Decl. ¶ 6. Second, Pallies was not in the position pursuant to a medical restriction or an officially requested accommodation. Id. ¶¶ 7–8. Tunks, on the other hand, was on restriction from Boeing Medical, had formally requested the job as an accommodation, and was already officially in the

---

[2] In his deposition, Cowell stated that Pallies did not tell him of the neuropathy until September 2015, when Boeing Medical diagnosed Pallies and assigned him several medical restrictions as a result. Dkt. # 36-1 at 3. Though the parties dispute when Pallies's managers learned of his condition, that disputed fact is not material to the Court's conclusion.

reassignment process. Id. ¶¶ 8–9. For that reason, Boeing's EEOC policy also gave Tunks priority. Id. ¶ 9. The job went to Tunks in January 2015, and Pallies resumed working as a hooktender. White Decl. ¶¶ 9–10.

　　To resume work, Boeing Medical needed to recertify Pallies. In his visit, Pallies disclosed his neuropathy and was still certified with no restrictions. Dkt. # 35-2 at 14–15. Pallies did not seek disabled status or a formal accommodation. He claims that he discussed the decision whether to seek out Boeing Medical with his second-level manager, Kenneth White, and that White told him going to Boeing Medical would be like "cutting your own throat." Pallies Decl. ¶ 11. As Pallies explains it, "if he went to Boeing Medical to request accommodations, he would still not be allowed to remain in dispatch, and if he did, he risked being able to return to hooktending due to his medical condition." Dkt. # 37 at 7.

　　He did, however, take leave to treat his neuropathy. On the leave form Pallies submitted in January 2015, Dr. Sharf concluded that Pallies's condition required regular treatment and intermittent leave, but that Pallies was not "unable to perform his[] essential job functions due to th[e] condition." Dkt. # 35-3 at 33. Pallies also briefly missed work for a knee injury, but Dr. Sharf again certified that Pallies could return to work full time and with regular duties. Dkt. # 35-2 at 139. In addition, Pallies contemporaneously submitted a health questionnaire that acknowledged his neuropathy, but still stated that he had no "conditions that [would] keep [him] from performing all tasks and functions of [his] job." Id. at 140, 144.

　　Pallies continued to work as a hooktender until September 2015, at which point he sought out Boeing Medical for pain associated with his neuropathy. Boeing Medical gave him several permanent restrictions and disqualified him from working as a hooktender. Dkt. # 36-1 at 123–24. Pallies formally requested an accommodation and entered Boeing's reassignment process. Id. at 126.

　　No accommodation would allow Pallies to stay on as a hooktender, which meant the only option was to reassign him to a vacant position. See Stevens Decl. ¶ 3. Over the next four months, Boeing's Disability Management department undertook an extensive search for a suitable vacant position but the effort ultimately proved fruitless. See Dkt. # 35-2 at 6–7. On

January 13, 2016, Boeing designated Pallies as "Medically Unable to Perform Work Assignment" and laid him off. Id. at 187.

On July 14, 2016, Pallies filed a charge with the U.S. Equal Employment Opportunity Commission ("EEOC"). Dkt. # 35-3 at 10. On August 5, 2016, the EEOC issued a "Right to Sue" notice stating that it was terminating processing of Pallies's charge. Id. at 7. Pallies then sued Boeing for alleged violations of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq., and Washington's Law Against Discrimination ("WLAD"), RCW 49.60.030 et seq. Compl. (Dkt. # 1). After discovery, Boeing moved for summary judgment. Dkt. # 35.

## II. DISCUSSION

Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In determining whether there is a factual dispute requiring trial, the Court will "view the evidence in the light most favorable to the nonmoving party . . . and draw all reasonable inferences in that party's favor." Krechman v. Cty. of Riverside, 723 F.3d 1104, 1109 (9th Cir. 2013). A dispute about a material fact is "genuine" only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). There is no genuine issue for trial "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

Boeing argues for summary judgment on several grounds. For the ADA claims, Boeing argues that Pallies failed to exhaust administrative remedies for any allegedly unlawful acts outside the relevant limitations period. For the ADA and WLAD claims, Boeing argues that summary judgment is warranted on the merits.

A. **Exhaustion of ADA Claims**

For the Court to have jurisdiction over a claim brought under the ADA, a plaintiff must first exhaust administrative remedies. EEOC v. Farmer Bros. Co., 31 F.3d 891, 899 (9th Cir. 1994). To do so, claimants must comply with certain procedural requirements, including that an EEOC charge be filed within either 180 or 300 days "after the alleged unlawful employment

practice occurred." 42 U.S.C. § 2000e–5(e)(1); see also id. § 12117 (incorporating § 2000e-5's procedural elements). The default limitations period is 180 days, but the statute extends that to 300 days when the aggrieved person initially instituted proceedings before a qualifying state or local agency. Id. § 2000e-5(e)(1). In evaluating a claim's timeliness, the Court looks to the discrete acts alleged to be unlawful—for example, the relevant "termination, failure to promote, denial of transfer, or refusal to hire." Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 114 (2002). If a discrete act falls outside the prescribed time limit, then any claim based on that act is time-barred and unexhausted. Id. at 109.

Pallies filed his EEOC charge on July 14, 2016. Dkt. # 35-3 at 10. The parties devote little briefing to which limitations period applies, but the Court concludes that 300 days is appropriate.[3] Applying that period, any allegedly unlawful acts before September 18, 2015, are time-barred and any dependent ADA claims are unexhausted.

Pallies argues that Boeing's failure to accommodate his disability is a continuing violation that incorporates Boeing's actions even before the 300-day period preceding his EEOC charge. Dkt. # 37 at 24–25. In National Railroad Passenger Corporation v. Morgan, however, the Supreme Court explained that "[e]ach incident of discrimination . . . constitutes a separate actionable 'unlawful employment practice,'" 536 U.S. at 114, and "starts a new clock for filing charges alleging that act," id. at 113. Pallies alleges discrete unlawful acts in asserting that Boeing violated the ADA when it failed to permanently assign him to the dispatch position in August 2014 and when it replaced him with Tunks in January 2015. Those incidents are distinct from Pallies's medical disqualification, his reassignment process, and his medical layoff. Pallies's ADA claims are time-barred and unexhausted insofar as they rely on discrete acts before September 18, 2015.

---

[3]       Pallies's charge appears to have been concurrently filed with the EEOC and the Washington State Human Rights Commission, Dkt. # 35-3 at 10, but there is no evidence of which agency processed the claim. Boeing sends mixed signals on the proper period: its motion refers to 180 days, Dkt. # 35 at 18, but its reply invokes 300 days, Dkt. # 39 at 3. (Pallies is silent on the issue.) Given those facts and that Boeing bears the burden of persuasion for this defense, Albino v. Baca, 747 F.3d 1162, 1168 (9th Cir. 2014) (en banc), the Court concludes that the 300-day period should apply.

**B.  Merits**

Boeing also moves for summary judgment on the merits. Pallies claims Boeing violated the ADA and WLAD by "discriminat[ing] against and fail[ing] to accommodate [him]," Compl. ¶¶ 4.3, 5.1, and by "fail[ing] to engage in the interactive process in good faith," id. ¶¶ 4.4, 5.2. Those claims invoke two forms of discrimination. One is disparate treatment, which alleges an employer took adverse action against a qualified disabled employee because of a disability. See Snead v. Metro. Prop. & Cas. Ins. Co., 237 F.3d 1080, 1087 (9th Cir. 2001); Roeber v. Dowty Aerospace Yakima, 116 Wn. App. 127, 135 (2003). The other is liability for failing to make reasonable accommodations for a disabled employee to continue performing his job. See Zivkovic v. S. Cal. Edison Co., 302 F.3d 1080, 1088–89 (9th Cir. 2002); Davis v. Microsoft Corp., 149 Wn.2d 521, 532 (2003). Because the parties devote most of their attention to the accommodation claim, the Court will address it first.

**1.  Failure to Accommodate**

Under the ADA and the WLAD, employers must make reasonable accommodations so disabled employees can perform the essential functions of their jobs, unless making those accommodations would be an undue hardship. U.S. Airways, Inc. v. Barnett, 535 U.S. 391, 396 (2002); Riehl v. Foodmaker, Inc., 152 Wn.2d 138, 145 (2004). Under both statutes, establishing a *prima facie* claim requires a plaintiff to show (1) he is disabled; (2) he is qualified for the job in question and capable of performing it with reasonable accommodation; (3) the employer had notice of his disability; and (4) the employer failed to reasonably accommodate his disability. Steenmeyer v. Boeing Co., 92 F. Supp. 3d 1024, 1030 (W.D. Wash. 2015). "To prevail on an accommodation claim, the plaintiff-employee must have requested an accommodation, unless the need for one was obvious." McDaniels v. Grp. Health Co-op., 57 F. Supp. 3d 1300, 1314 (W.D. Wash. 2014). An accommodation may take the form of reassignment to a vacant position, but an employer need not create a new position or reassign existing employees to accommodate a disabled employee. Wellington v. Lyon Cty. Sch. Dist., 187 F.3d 1150, 1155 (9th Cir. 1999); MacSuga v. Cty. of Spokane, 97 Wn. App. 435, 442 (1999).

Pallies's EEOC charge lists his termination as Boeing's allegedly unlawful act, Dkt. # 35-3 at 10, but he also proceeds on the theory that Boeing failed to accommodate him by not permanently assigning him to the dispatch position in June 2014 and by replacing him with Tunks in January 2015, Dkt. # 37 at 10–19. As noted, some of those alleged violations are not properly before the Court for purposes of the ADA,[4] but Pallies's claims cannot survive summary judgment regardless and the Court addresses his claims under both statutes together.

The record shows that Pallies was not disabled until September 2015—that is, the record shows that, until then, his condition did not substantially limit his ability to do his job, see RCW 49.60.040, or preclude him from performing the job's essential functions, see 42 U.S.C § 12111(8). Dr. Sharf indicated in January 2015 that Pallies's neuropathy did not render him "unable to perform his[] essential job functions." Dkt. # 35-3 at 33. Boeing Medical reached that conclusion when it recertified him despite his neuropathy. Dkt. # 35-2 at 14–15. Dr. Sharf's July 2015 certification reflects that conclusion, see id. at 139, and Pallies himself contemporaneously stated that he did not "have any conditions that [would] keep [him] from performing all tasks and functions of [his] job," id. at 140. The record does not support an inference that Pallies was disabled before September 2015. See Steenmeyer, 92 F. Supp. 3d at 1030.

Once Pallies was disqualified and requested an accommodation, Boeing undertook an extensive but ultimately unsuccessful search for a suitable substitute position. The search lasted four months and reviewed more than forty vacant positions, but none of them was a suitable assignment. On this record, Pallies cannot point to a reasonable accommodation that Boeing failed to provide when he was disabled. See Steenmeyer, 92 F. Supp. 3d at 1030.

Pallies argues that he was actually disabled in June 2014 and that Boeing is liable for failing to assign him to the dispatch position at that time.[5] He essentially argues that if his

---

[4] Pallies's WLAD claim faces no exhaustion or statute-of-limitations obstacles because it was filed within three years of the allegedly discriminatory acts. See Goodman v. Boeing Co., 75 Wn. App. 60, 77 (1994).

[5] As noted, this theory incorporates allegedly unlawful acts that are unexhausted and not properly before the Court for purposes of Pallies's ADA claims. See supra Part II.A. Even were those

1  managers had caused him to enter Boeing's disability protocol before Tunks had a heart attack,

2  then he would have been permanently assigned to the dispatch job and Tunks never would have

3  displaced him.

4      That does not lay out a viable theory of liability. As an initial point, even if Pallies could

5  show the neuropathy sufficiently impacted his hooktender performance in June 2014, he admits

6  that his temporary assignment to dispatch obviated the need for an accommodation until January

7  2015 at the earliest, see Dkt. # 35-2 at 31, when Tunks was already destined for the job. In

8  addition, Pallies did not request an accommodation, and the record does not suggest the need

9  was obvious or that Boeing was otherwise on notice. See McDaniels, 57 F. Supp. 3d at 1314.

10     Even if Pallies could show that he was disabled in 2014 and his managers knew it, neither

11 the ADA nor the WLAD requires that a manager place a potentially disabled employee in a

12 formal disability protocol. Boeing has implemented procedures to provide a structure for

13 accommodating disabled employees and complying with the law, but nothing in either statute

14 obligates a manager to use the formal process to accommodate a potential disability. Indeed, if

15 informal accommodations remove disability-based limitations on an employee's ability to

16 perform essential job functions, those accommodations may bring a company in compliance

17 with the ADA and WLAD regardless of the process that produced them. Even on Pallies's

18 theory, he cannot point to a moment when he needed a reasonable accommodation that actually

19 existed and that Boeing failed to provide. See Steenmeyer, 92 F. Supp. 3d at 1030.

20     Pallies makes several other unavailing arguments. He argues that Boeing should have

21 accommodated him by transferring Tunks so Pallies could work the dispatch job, Dkt. # 37 at

22 20, but the law does not require that employers reassign existing employees to accommodate

23 disabled ones, see Wellington, 187 F.3d at 1155; MacSuga, 97 Wn. App. at 442. Pallies argues

24 that Boeing's failure to explore Tunks's transfer reveals bad faith in the interactive

25 accommodation process. As noted, Boeing did not have to reassign existing employees, and

26

27

28 claims exhausted, they would not survive summary judgment for the same reasons that Pallies's WLAD
   claims fail, and the Court need not parse out the unexhausted ADA claims from this discussion.

nothing else in the record reveals Boeing failed to make a good faith effort to find Pallies another position. In addition, any liability surrounding an employer's accommodation efforts depends on the existence of an actual accommodation. Weeks v. Union Pac. R.R. Co., 137 F. Supp. 3d 1204, 1217 (E.D. Cal. 2015); Fey v. State, 174 Wn. App. 435, 453 (2013). Pallies cannot succeed on an interactive-process theory without first showing an accommodation was possible. See Weeks, 137 F. Supp. 3d at 1217; Fey, 174 Wn. App. at 453.

Pallies also argues that Boeing should have notified him of a position that opened after he was terminated. Dkt. # 37 at 21–22. Contrary to Pallies's suggestion, Dean v. Municipality of Metro. Seattle-Metro, 104 Wn.2d 627 (1985), involved positions that opened while the plaintiff was still employed and the Dean decision did not create an obligation for employers to notify laid-off employees of vacancies that arise after termination. Pallies cites no other legal authority for his position, and the Court finds no reason to adopt it. See Emerson v. N. States Power Co., 256 F.3d 506, 516 (7th Cir. 2001) (rejecting for lack of legal support plaintiff's contention that employer had a continuing duty to notify her of post-termination vacancies).

Pallies makes several other points that do not affect Boeing's liability. He asserts that he obtained rights to the dispatch job after filling the position for more than ninety days. See Dkt. # 37 at 5 & n.5, 16–18. This may support a breach-of-contract claim or another grievance under the CBA, but it does not affect Boeing's liability under the ADA or WLAD. Pallies also emphasizes that his managers assured him that they "had his back" and that Tunks would not replace him. Id. at 6–7. That Pallies was ultimately replaced is unfortunate for him, but his managers' assurances do not make Boeing liable for disability discrimination. Nor does Pallies's assertion that White's "cut your own throat" comment dissuaded him from formally seeking a disability accommodation in December 2014. See id. at 14–15, 23–24. Nothing in the record indicates that formally seeking an accommodation at that time would have kept Pallies in the dispatch job, and Pallies does not argue that White's comment otherwise amounted to disability discrimination. The Court concludes that there is no genuine issue of material fact and judgment for Boeing is warranted on Pallies's accommodation claims. See Fed. R. Civ. P. 56(a).

### 2. Disparate Treatment

Boeing also moves for summary judgment insofar as Pallies's complaint alleges disparate treatment. Dkt. # 35 at 16–19. Pallies does not oppose summary judgment on a disparate-treatment theory, and instead focuses on arguing that Boeing failed to reasonably accommodate his neuropathy. Because his complaint plausibly alleges disparate-treatment claims, see Compl. ¶¶ 4.3, 5.1, the Court will address Boeing's motion in that respect.

Establishing a *prima facie* disparate-treatment claim requires that a plaintiff show (1) he is disabled; (2) he is qualified; and (3) he suffered an adverse employment action because of his disability. Snead, 237 F.3d at 1087; Roeber, 116 Wn. App. at 135. The Court concludes that the record cannot support a disparate-treatment claim and that summary judgment for Boeing is appropriate. Nothing in the record suggests that Boeing made any of the employment decisions surrounding the dispatch position because of Pallies's disability.[6] In fact, the record suggests Boeing removed Pallies from the dispatch position because he was not disabled. In addition, his medical termination cannot support a disparate-treatment claim, because Pallies cannot show that he was qualified for the position of hooktender or any other vacant position at Boeing when he was terminated. See Snead, 237 F.3d at 1087; Roeber, 116 Wn. App. at 135. For these reasons, the Court concludes that there is no genuine issue of material fact and judgment for Boeing is warranted on Pallies's disparate-treatment claims. See Fed. R. Civ. P. 56(a).

### III. CONCLUSION

For the foregoing reasons, the Court concludes that Pallies's ADA claims that rest on discrete acts outside the limitations period are unexhausted and DISMISSED for lack of jurisdiction. For Pallies's remaining claims, the Court concludes that there is no genuine issue of material fact and that Boeing is entitled to judgment as a matter of law.

---

[6] As noted, any ADA claim based on allegedly disparate treatment that predated the 300-day limitations period is unexhausted and not properly before the Court. See supra Part II.A. As with Pallies's accommodation claims, see supra note 5, the Court need not separately discuss which discrete acts are time-barred, because his ADA disparate-treatment claim would not survive summary judgment for the same reasons that his WLAD disparate-treatment claim fails.

1    Boeing's motion, Dkt. # 36, is GRANTED. The Clerk of Court is directed to enter

2 judgment in favor of defendant and against plaintiff.

3    DATED this 29th day of June, 2018.

4

5

6    _MNS S Lasnik_

7    Robert S. Lasnik
     United States District Judge

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28