# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF WASHINGTON
# AT SEATTLE

| | |
|---|---|
| DAVID PALLIES,<br><br>        Plaintiff,<br><br>    v.<br><br>THE BOEING COMPANY,<br><br>        Defendant. | Case No. 2:16-CV-1437-RSL<br><br>ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR RECONSIDERATION |

This matter comes before the Court on plaintiff David Pallies' motion for reconsideration. Dkt. #63. The Court granted summary judgment in favor of defendant, the Boeing Company, on June 29, 2018. Dkt. #61. Plaintiff timely filed this motion seeking reconsideration of three issues. On September 17, 2018, the Court denied the motion as to the first two issues, but reserved ruling on the third. Dkt. #67. Boeing filed further briefing in opposition to plaintiff's motion for reconsideration on September 26, 2018. Dkt. #68.

**BACKGROUND**

This case stems from plaintiff's development of a neurological disorder that eventually prevented him from doing his job at Boeing. Plaintiff started working with Boeing on December 2, 2010. Dkt. #1 at ¶3.1. He was hired as a hook tender to operate cranes. Id. at ¶3.2. On May 30, 2014, he was diagnosed by Dr. Roger Sharf with probable Charcot-Marie Tooth disease. Sharf Decl. (Dkt. #23) at ¶4. Various events occurred that are not relevant to this motion. Eventually, on January 13, 2016, Boeing designated plaintiff as "Medically Unable to Perform

ORDER GRANTING IN PART PLAINTIFF'S
MOTION FOR RECONSIDERATION - 1

Work Assignment" and laid him off. Dkt. #35-2 at 187. After his termination, a crane scheduler position became available in Boeing's Industrial Engineering Department. Cowell Decl. (Dkt. #40) at ¶2. This was not offered to plaintiff. Pallies Decl. (Dkt. #38) at ¶18. On September 12, 2016, plaintiff filed a Complaint against Boeing for violations of the Americans with Disabilities Act, see 42 U.S.C. § 12101 *et seq.*, and Washington's Law Against Discrimination, see RCW 49.60.030 *et seq.* Dkt. #1 at ¶¶ 4.0-5.3. He specifically alleged that Boeing discriminated against him by failing to place him in a position at Boeing after he was medically laid off. Id. at ¶5.3.

Boeing filed a motion for summary judgment on July 5, 2017. Dkt. #35. In his response, plaintiff argued *inter alia* that an employer's obligation to accommodate an employee extends beyond the employee's termination. Dkt. #37 at 21-22. He cited to Dean v. Municipality of Metro. Seattle-Metro, 104 Wn.2d 627, 628 (1985), but no additional authority. See Dkt. #61 at 9. The Court found that, "[c]ontrary to [plaintiff]'s suggestion, [Dean] involved positions that opened while the plaintiff was still employed and the Dean decision did not create an obligation for employers to notify laid-off employees of vacancies that arise after termination." Id. The Court granted summary judgment in favor of Boeing. In his motion for reconsideration, plaintiff advised the Court of the Washington Court of Appeals' decision in Wheeler v. Catholic Archdiocese of Seattle, 65 Wn. App. 552 (1992), rev'd on other grounds, 124 Wn. 2d 634 (1994) and argued that summary judgment should accordingly be reversed on the issue of post-termination accommodation.

## DISCUSSION

**A. Legal Standard**

Motions for reconsideration are generally disfavored. LCR 7(h). The Court will "ordinarily deny such motions in the absence of a showing of manifest error in the prior ruling or a showing of new facts or legal authority which could not have been brought to its attention earlier with reasonable diligence." Id.

ORDER GRANTING IN PART PLAINTIFF'S
MOTION FOR RECONSIDERATION - 2

The Court grants summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment must be denied if, viewing the evidence in the light most favorable to the non-moving party, there are genuine issues of material fact. <u>Nolan v. Heald Coll.</u>, 551 F.3d 1148, 1154 (9th Cir. 2009) (quoting <u>Leisek v. Brightwood Corp.</u>, 278 F.3d 895, 898 (9th Cir. 2002) (internal quotation marks omitted)).

### B. Employer's Duty to Accommodate

Under Washington law, it is an unfair practice for any employer "[t]o discharge or bar any person from employment because of age, sex, marital status, sexual orientation, race, creed, color, national origin, honorably discharged veteran or military status, or the presence of any sensory, mental, or physical disability or the use of a trained dog guide or service animal by a person with a disability." RCW § 49.60.180.

The elements of a claim of handicap discrimination are: "(1) the plaintiff is handicapped; (2) he or she was qualified to fill a vacant position; and (3) the employer failed to take affirmative measures to make known such job opportunities to the plaintiff and to determine whether he or she was in fact qualified for those positions. The third element is known as the employer's duty reasonably to accommodate the handicapped individual." <u>Wheeler</u>, 65 Wn. App. at 560-61 (citing <u>Reese v. Sears, Roebuck & Co.</u>, 107 Wn.2d 563, 579 (1987), <u>overruled on other grounds</u>, <u>Phillips v. Seattle</u>, 111 Wn.2d 903 (1989)).

#### a. Washington Court of Appeals' Decision in <u>Wheeler</u>

In <u>Wheeler</u>, the three job vacancies that the plaintiff alleged she was qualified to fill arose after the termination of her employment. <u>Id</u>. The Court of Appeals noted that "[t]he question [of] whether an employer's duty of reasonable accommodation extends beyond the termination of the employer-employee relationship, and how long it extends, ha[d] not been directly addressed in Washington case law." <u>Id</u>. But it found that "three Washington Supreme Court decisions provide[d] … guidance on this question." <u>Id</u>. First, in <u>Dean</u>, the Supreme Court did not

differentiate between the employer's duty regarding the vacancies that arose before and after the plaintiff's resignation. <u>Id</u>. at 562 (citing <u>Dean</u>, 104 Wn.2d at 637). Second, in <u>Clarke v. Shoreline Sch. Dist. 412</u>, 106 Wn.2d 102 (1986), the Supreme Court stated in dictum that the school district had an ongoing duty to accommodate the plaintiff even after his discharge. <u>Id</u>. (citing <u>Clarke</u>, 106 Wn.2d at 119). Third, in <u>Phillips v. City of Seattle</u>, 111 Wn.2d 903 (1989), the Supreme Court held that the question of whether keeping the plaintiff's job open after his discharge was an undue burden or a reasonable accommodation was a question for the jury. <u>Id</u>. at 563 (citing <u>Phillips</u>, 111 Wn.2d at 911).

Accordingly, the Court of Appeals concluded that "the period of time the duty of accommodation continues after termination should not be imposed as a matter of law. … [I]t is for the trier of fact to decide at what point continued attempts to accommodate become an undue burden as opposed to a reasonable requirement." <u>Id</u>. Plaintiff argues that summary judgment must therefore be reversed on the issue of whether Boeing had a post-termination obligation to accommodate plaintiff by identifying open positions after his termination. Given the decision in <u>Wheeler</u>, the Court agrees.

### b. Timeliness of Plaintiff's Arguments

Boeing does have a meritorious argument that plaintiff could have and should have raised this legal authority earlier. Dkt. #68 at 2-3. However, <u>Wheeler</u> also offers a different interpretation of <u>Dean</u>, which plaintiff had originally cited in his original briefing.

In <u>Dean</u>, it is unclear precisely when the vacancies in question arose. The plaintiff lost sight in his right eye due to disease in April 1979. <u>Dean</u>, 104 Wn.2d at 628. He remained an employee at the Municipality of Metropolitan Seattle ("Metro") by using up his sick leave and disability and then taking leave without pay. <u>Id</u>. During this time, in May 1979, a vacancy arose as an equipment service operator. The plaintiff was qualified for the position, but he was not told about it. <u>Id</u>. at 629. The plaintiff resigned in December 1979. <u>Id</u>. at 628. In or around March 1980, he met with his employer's equal employment officer. <u>Id</u>. at 631. He testified that the

ORDER GRANTING IN PART PLAINTIFF'S
MOTION FOR RECONSIDERATION - 4

officer "told him Metro had no policy regarding handicapped accommodation unless it involved an on-the-job injury and that he would have to apply like everyone else." Id. He then applied for three jobs, including equipment service operator. Id. It is not clear what the other two positions were, or when those vacancies arose. However, the Court of Appeals in Wheeler interpreted at least two of these as arising after the plaintiff's resignation and noted that the "[Supreme] [Court] did not differentiate between the employer's duty regarding vacancies which arose *before* [the plaintiff]'s resignation and those which arose *after* it." Wheeler, 65 Wn. App. 552. Furthermore, the Court "favors just opinions based on the merits instead of relying on procedural defaults." Stone v. Gov't Employees Ins. Co., No. C16-5383BHS, 2016 WL 5938819, at *1 (W.D. Wash. Oct. 12, 2016).

### c. Boeing's Discharge of Its Obligations

Boeing also argues that it had no obligation to inform plaintiff of the salaried, non-union position of crane scheduler when he had previously refused to consider a salaried, non-union position. Dkt. #68 at 3. It cites to Molloy v. City of Bellevue, 71 Wn. App. 382 (1993), in which the plaintiff declined an offer to work as a dispatcher because he was moving from Washington to California. The Court of Appeals held that the City's obligation to notify him of other employment ended when he expressed his intent to move. Molloy, 71 Wn. App. at 392.

The Reassignment Process Information Form to which Boeing refers is signed by plaintiff and dated October 27, 2015. See Dkt. #85-2 at 182-83. In answer to a request for additional information, there is handwriting that says, "No salary – Cranes." Id. at 182. However, all five Reassignment Process Outcomes appear to have been marked, including "Lateral Salaried" and "Downgrade Salaried." Id. Furthermore, the portion of the form allowing an employee to elect not to be reviewed for vacant salaried positions is crossed out. Id. at 183; see Dkt. #69 at 3. Plaintiff also stated in his Supplemental Declaration that he never indicated that he would outright refuse a salary position or a non-union position. Dkt. #44 at ¶¶ 1-2. Whether plaintiff wished to be considered for a salaried, non-union position is a genuine issue of material fact. See Fed. R. Civ. P. 56.

ORDER GRANTING IN PART PLAINTIFF'S
MOTION FOR RECONSIDERATION - 5

Finally, Boeing argues that plaintiff and employees like him can return to the company for a six-year period following medical layoff, that it told plaintiff to continue to monitor job vacancies on the Boeing Employment web page, and that it informed plaintiff that it would provide him with 12 months of Post Term Application Assistance. Id. at 2-3. However, the Court of Appeals held in Wheeler that an employer's duty toward a handicapped former employee is "an affirmative duty to *inform* him of job openings for which he might be qualified." Wheeler, 65 Wn. App. at 562 (citing Dean, 104 Wn.2d at 637). The question is "at what point continued attempts to accommodate become an undue burden as opposed to a reasonable requirement." Id. at 563. That is for the trier of fact to decide, based on the size of the employer's business, the value of the employee's work, whether the cost can be included in planned remodeling or maintenance, the requirements of other laws and contracts, and other appropriate considerations. Id. (citing WAC 162-22-080(3)).

## **CONCLUSION**

For all the foregoing reasons, plaintiff's motion is GRANTED IN PART. Summary judgment is REVERSED as to the issue of whether or not Boeing made reasonable accommodations for plaintiff in terms of informing him of vacancies that opened after he was terminated. See Dkt. #61 at 9.

DATED this 19th day of March, 2019.

*[signature]*
Robert S. Lasnik
United States District Judge

ORDER GRANTING IN PART PLAINTIFF'S
MOTION FOR RECONSIDERATION - 6